

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JRS:PJC
F. #2021R00440

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 1, 2026

**TO BE FILED UNDER SEAL**

<u>By ECF</u>

The Honorable Diane Gujarati
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Huiling Wu
>          Criminal Docket No. 23-199 (DG)

Dear Judge Gujarati:

The government respectfully submits this letter in anticipation of sentencing in the above-referenced case, which is currently scheduled for April 17, 2026.  On May 23, 2023, defendant Huiling Wu pleaded guilty before the Honorable Allyne R. Ross, United States District Judge, to a single-count information charging conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.  (ECF No. 23 (the "Information").) ███████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████

I.        Background

        A.        <u>Offense Conduct</u>

Between 2017 and 2022, Wu worked as an employee and then manager and owner of 888 Pharmacy Inc. ("888 Pharmacy").  (<u>See</u> Presentence Investigation Report ("PSR") ¶ 28.) 888 Pharmacy, and other pharmacies within a network of pharmacies owned by Taesung Kim, billed Medicare for prescription drugs that were medically unnecessary and/or induced by the payment of kickbacks and bribes.  (<u>Id.</u> ¶ 36.)  The kickbacks and bribes occurred on two levels. First, doctors were induced to refer prescriptions to 888 Pharmacy and other pharmacies Kim owned in exchange for free rent, office staff, and patient referrals.  (<u>Id.</u> ¶ 37.)  Then, customers

were induced to fill their prescriptions at 888 Pharmacy and other pharmacies Kim owned through the payment of supermarket gift certificates for their prescriptions and the offer of cash and supermarket gift certificates in exchange for the balance of their over-the-counter ("OTC") benefits card. (Id. ¶ 39.) These prescriptions were medically unnecessary because they were sought primarily for the high value kickbacks tied to them; indeed, recordings by a confidential source showed that customers were pushed to obtain certain profitable prescriptions. (See id. ¶ 43.) The pharmacies also waived the collection of co-payments, which also served as an additional illicit incentive. (Id. ¶ 39.) The general operation of the scheme was captured in confidential source recordings conducted at Elmcare Pharmacy Inc. ("Elmcare") and NY Elm Pharmacy Inc. ("NY Elm") over an approximately 12-month period, which cooperators have confirmed represents how the pharmacies in Kim's network operated. (See id. ¶ 43.)

In December 2022, concurrent with Wu's arrest pursuant to a complaint charging her with conspiracy to commit health care fraud, law enforcement searched 888 Pharmacy, NY Elm Pharmacy, and Huikang Pharmacy. (Id. ¶ 48.) Those searches recovered evidence consistent with a health care kickback and health care fraud scheme, including (i) supermarket gift certificates, (ii) pre-prepared bags of cash corresponding to customers' OTC card balances, (iii) customers' OTC cards with receipts reflecting OTC items that were scanned for dispensing but not dispensed, (iv) notebooks containing scannable barcodes for processing OTC transactions, and (v) receipts for rent payments to a podiatry office. (Id.) Law enforcement also seized and searched Wu's phone in connection with the searches.

Wu's phone contained group text messages with her and the other owners of 888 Pharmacy, including Kim. In these messages, Kim documented checks written from 888 Pharmacy's bank accounts to shell entities that converted the checks to cash. The cash was then used to pay the OTC kickbacks and to provide profit distributions to the owners, including Wu.



2



## II.    The Guidelines Calculation

The government agrees with the Guidelines calculation set forth by the United States Probation Department ("Probation") in the PSR.

The PSR calculates a total offense level of 21.  (Id. ¶¶ 59-69.)  The base offense level is six, and 18 levels are added for a loss exceeding $3,500,000.  (Id. ¶¶ 59-60.)  Two additional levels are added based on a loss to a federal health care program exceeding $1,00,000.  (Id. ¶ 61.)

Based on the defendant's lack of criminal history, she is entitled to a two-level reduction under Section 4C1.1.  (Id. ¶ 68.)  The defendant has accepted responsibility and is therefore entitled to a further three-level reduction.  (Id. ¶¶ 66-67.)  This results in an adjusted offense level of 21.  (Id. ¶ 69.)

With a criminal history category of I and a total offense level of 21, the defendant's Guidelines range of imprisonment is 37 to 47 months.  (Id. ¶ 106.)





4



### V.        Restitution and Forfeiture

Under 18 U.S.C. § 3663A, the Court shall impose restitution.  In <u>United States v. Zangari</u>, 677 F.3d 86, 93 (2d Cir. 2012), the Second Circuit held that restitution must be measured according to the victim's actual loss, not the defendant's gain.  Moreover, in calculating restitution, "these losses need not be mathematically precise," and "[a] reasonable approximation will suffice, especially in cases in which an exact dollar amount is inherently incalculable."  <u>United States v. Rivernider</u>, 828 F.3d 91, 115 (2d Cir. 2016) (internal quotation marks omitted).

The government respectfully submits that the Court should order Wu to pay restitution, which the defendant agreed to pay in her cooperation agreement.  (<u>See</u> PSR ¶ 51; Cooperation Agreement ¶ 1(e).)  Here, the Court should order Wu to pay restitution in the amount of $3,853,543.00 to CMS, which is the value of the medically unnecessary prescription drugs dispensed.  (<u>See</u> PSR ¶ 115.)  Restitution should be joint and several with the restitution imposed against co-conspirators charged on the following dockets:

- <u>United States v. John Doe</u>, No. 23-CR-177 (DG);
- <u>United States v. Taesung Kim, et al.</u>, No. 23-CR-191 (DG);
- <u>United States v. Hua Huang</u>, No. 23-CR-234 (ARR);
- <u>United States v. Zhibin Lai</u>, No. 23-CR-246 (DG);
- <u>United States v. John Doe</u>, No. 24-CR-148 (DG);
- <u>United States v. John Doe</u>, No. 24-CR-149 (DG); and
- <u>United States v. Feng Jiang</u>, No. 24-CR-264 (ARR).

5



VII.    <u>Conclusion</u>

<div style="margin-left:40%">

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

LORINDA LARYEA
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By:    <u>*/s/Patrick J. Campbell*</u>
Patrick J. Campbell
Trial Attorney, Fraud Section
Criminal Division
U.S. Department of Justice
(202) 262-7067

</div>

cc:    Clerk of Court (DG) (by email)
Alan Gerson, Esq. (by email)
Probation Officer Alexandria M. Lohwasser (by email)